## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**EDWARD FERRARO and**　　　　　:
**TAMMIE FERRARO,**

　　　　　　　　　　　:

　　　**Plaintiffs**　　　　**CIVIL ACTION NO. 3:11-1766**

　　　　　　　　　　　:

　　　**v.**

　　　　　　　　　　　:　　　**(JUDGE MANNION)**

　**UNITED STATES OF AMERICA,**

　　　　　　　　　　　:

　　　**Defendant**

## M E M O R A N D U M

Plaintiff Edward Ferraro had a contract to provide the vending machines for the United States Postal Service facility on Stafford Avenue in Scranton, Pennsylvania. In January 2009, when he was delivering items for the vending machines in the post office, he parked his pickup truck near the rear of the facility's parking lot. After parking his car, he removed an item for delivery from the bed of his truck, and, after taking a step or two, fell onto his lower back. Plaintiff argues that the fall and his resulting injuries were caused by the failure of defendant to properly maintain the parking lot and keep it clear of ice and snow. Defendant disputes its liability, arguing that there is no indication that accumulated snow and ice caused the fall or that it had notice that the lot was in a dangerous condition. Plaintiffs moved for summary judgment as to liability on their claims for negligence and loss of consortium[1] brought

---

[1]The briefing solely addresses negligence and does not address loss of consortium.

pursuant to the Federal Tort Claims Act. For the following reasons, the motion is **DENIED**.

## I.   BACKGROUND[2]

Plaintiff Edward Ferraro had a contract to supply the vending machines at the United States Postal Service ("USPS") complex on Stafford Avenue in Scranton, PA. On January 22, 2009, plaintiff arrived at the facility to stock the vending machines. He backed his truck into a parking spot at the rear of the building and got out of his car. He lifted a case of water bottles from the back of his truck, took a step or two, and then fell onto his back and buttocks. Plaintiff was unable to get up from the ground, move from the parking lot, or walk. Plaintiff's affidavit states that while he was lying on the ground after his fall, he could see the patch of snow and ice on which he had slipped, and observed numerous footprints and indentations in the snow patch. (Doc. 36-1, at 20). A USPS worker discovered plaintiff on the ground and ran to get help from other workers at the facility. An ambulance took plaintiff to the hospital shortly after his fall.

---

[2]Facts are taken from the parties' statements of material facts and attached exhibits unless otherwise noted. (Doc. 37, Doc. 41). Material disputes are noted. Plaintiffs' statement of facts does not comport with Local Rule 56.1, as it does not contain citations to the record which support the facts plaintiffs claim are undisputed. The court will nevertheless consider plaintiffs' motion and statement of facts, as their brief cites to the record with specificity, but plaintiffs' counsel is reminded to comply with the Local Rules in all future filings with the court.

The USPS facility where the accident occurred is very large, with hundreds of parking spaces and hundreds of thousands of square feet taking up more than 19 acres. When looking at photographs of the parking lot where the accident occurred, plaintiff and several USPS employees were unable to say with certainty at which particular spot plaintiff fell. Frederick Lidle,[3] an employee of the USPS, wrote in the accident report that there were "slippery conditions in parking lot" at the time of the accident, and that it had been "very cold over 2 week period. [S]now, freezing rain on and off." He also noted in the report that plaintiff parked in an area used for storing unused equipment and recycling, not in his usual parking spot. (Doc. 36-1, at 39). He testified that he asked plaintiff what had happened, and plaintiff responded that he had slipped on ice and fallen. (Doc. 41, at 32).

Douglas Baxter, the manager of maintenance at the facility, testified that sometimes snow fell off of vehicles in the parking lot after the lot had been cleared by the USPS maintenance crew. Looking at photographs of the scene of the accident, he stated that because the lot had been cleared in other places, he opined that the snow near plaintiff's car had fallen off of a vehicle. (Doc. 41, at 23). He was away at a conference on the day of the accident, and

---

[3]While Mr. Lidle was deposed and asked questions regarding this incident report, and responded in a way indicating that he wrote the report, (Doc 41, at 36), the report is signed by a Ralph Lettieri. (Doc. 36-1, at 39). As the court only has excerpts from the deposition transcripts, it cannot determine the authorship of the incident report.

so did not inspect the area where plaintiff fell. He testified that the maintenance crew has a large salt spreader and plow. They use the salt in the parking lots, and also try to keep the roadways clear of snow. (Id., at 17). He stated that snow removal is a top priority of the crew and that if snow was reported, it would be taken care of immediately, or within thirty minutes or so. (Id., at 18). While his crew made efforts to treat areas where water was known to accumulate or where snow piled up, he stated that it was not necessarily a violation of policy for some snow to remain, because it was simply not possible to always clear all of the snow. (Id., at 19). He also opined that the photos of the area plaintiff fell showed that salt had been applied to the snow. (Id., at 21). He further stated that he could see footprints in the snow, but did not know how long the snow had been in the parking lot. (Id., at 23).

Andrew Bethel, another USPS worker, testified that after plaintiff was taken away in the ambulance, he went looking with Mr. Lidle to see how the accident had occurred, and saw a patch of ice which he assumed caused the accident. (Doc. 41, at 27).

The maintenance shift managers for the facilities also gave depositions in the case. While plaintiff represents that each of these three shift managers testified that the patch of snow and ice in question should have been cleared, the depositions excerpts are less clear. The excerpt of shift manger Richard Dickson, (Doc. 36-1, at 22), contains the question "[w]ould that have been something that should have been removed in your opinion, that snow, ice,

4

whatever you're calling it?" Mr. Dickson replied, "Yeah, if it was there. I mean, you know, yes, it should have been removed." He stated that he did not know how long the snow had been there. (Doc. 41, at 55). He also stated that employees would fill out sheets documenting their maintenance tasks and the amount of time it took to complete those tasks. (Id.). While he noted that there were safety committees at the facility, he did not know how often they addressed snow removal. (Id.).

Bernie Smicherko, another shift manager, referencing some photos of the parking lot he was shown during his deposition, testified that if the snow and ice in the parking lot "was there over a day," then failure to remove it would violate standard operating procedure. (Doc. 36-1, at 32). He further stated that if it were not removed for a day or more, his manager would be asking him about it. (Id.).

Shift supervisor John Lowe, answering questions about some photos of the parking lot where plaintiff fell, testified that the patch of snow and/or ice in the area where plaintiff had fallen looked as thought it had already been salted. (Doc. 36-1, at 26). When asked if that ice or snow should have been removed, he stated that it depended on how long the snow had been there after the snow had fallen, but that it should not have been left there for more than twenty-four hours. (Doc. 41, at 50). He also stated that the area where plaintiff parked was used mostly as storage space, but that he assumed it looked like parking spaces to an observer. (Id., at 49).

5

The record contains a report of the National Oceanic and Atmospheric Administration ("NOAA"). (Doc. 36-1, at 69-77). It shows the precipitation at the Wilkes-Barre/Scranton International Airport, located a few miles from the Stafford Ave. USPS location, on the day of and days preceding plaintiff's fall. The report reflects that trace amounts of snow fell late on January 20 and midday on January 21, with no snow falling thereafter until plaintiff's fall on the 22nd.

Plaintiff retained John Allin, an expert in snow removal, to write a report in this case. (Doc. 36-1, at 41-67).[4] The report opines, based on a review of the depositions and records kept by the USPS, that the Stafford Avenue facility did not have a snow response plan to address accumulations of snow and ice. Particularly, he opines that the record keeping and plans regarding snow removal were inadequate. He further opines that there was a failure to properly inspect the premises, as the snow had clearly accumulated and that someone inspecting the area should have applied enough salt or other deicing product to remove it.

---

[4]Defendant's brief requests that we not consider the report of Mr. Allin, arguing that "the expert report does not satisfy the requirements of Federal Rule of Civil Procedure 56(e)." (Doc. 42, at 14). However, defendant does not indicate how the report is deficient under Rule 56. Instead, it argues that snow removal is not an appropriate area of expertise and will not assist a trier of fact, and expresses an intention to move to exclude Mr. Allin from testifying at trial. As no formal motion has been made to exclude the report at this stage, the court will consider the report as part of the record. Defendant is free to oppose the testimony of Mr. Allin in a formal motion at a later date.

Plaintiffs filed this suit for negligence and loss of consortium pursuant to the Federal Tort Claims Act. 28 U.S.C. §1346. A bench trial in the case is scheduled to begin on October 27, 2014.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Casualty & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249 ; *see also* Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli v. Gates, 482 F.3d 641, 647 (3d

7

Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003); *see also* Celotex, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (*quoting* Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 322-23; Jakimas v. Hoffman La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).

## III.   DISCUSSION

The parties do not agree on the legal standard to apply to this case.

Plaintiff argues that the "hills and ridges" doctrine applies. The doctrine protects landowners from "liability for generally slippery conditions resulting from ice and snow where the owner has not permitted the ice and snow to unreasonably accumulate in ridges or elevations." Morin v. Traveler's Rest Motel, Inc., 704 A.2d 1085, 1087 (Pa.Super.1997). To recover under this doctrine, a plaintiff must show "(1) that snow or ice had accumulated on the sidewalk in ridges or elevations of such size and character as to unreasonably obstruct travel and constitute a danger to pedestrians traveling thereon; (2) that the property owner had notice, either actual or constructive, of the existence of such conditions; and (3) that it was the dangerous accumulation of snow and ice that caused the plaintiff to fall." Rinaldi v. Levine, 176 A.2d 623, 625-26 (Pa. 1962).

The doctrine's liability shield is based on the idea that ice and snow are "natural phenomena incidental to our climate." Sprinkle v. AMZ Mfg. Corp., 2013 WL 2338488, at *3 (M.D. Pa. May 29, 2013)(*citing* Rinaldi, 176 A.2d at 625). Thus, "[t]o require that one's walks be always free of ice and snow would be to impose an impossible burden in view of the climatic conditions of this hemisphere." Morin, 704 A.2d at 1087. The "hills and ridges" doctrine therefore only applies in cases where the snow and ice at issue are the result of "an entirely natural accumulation, following a recent snowfall." Bacsick v. Barnes, 341 A.2d 157, 160 (Pa.Super.1975).

Snowfall immediately preceding an accident would make the application

9

of the "hills and ridges" doctrine more appropriate. *See* Sprinkle, 2013 WL 2338488, at \*3. But if there has been human interaction with the precipitation which has caused some ice or snow to accumulate, the doctrine is inapt. *See* id.(*citing* Harvey v. Rouse Chamberlin, Ltd., 901 A.2d 523, 527 (Pa. Super 2006)).

Defendant argues that the standard from the Restatement (Second) of Torts applies. Under this standard, the court must first determine whether the plaintiff is a trespasser, licensee, or invitee. Carrender v. Fitterer, 469 A.2d 120, 123 (Pa. 1983). The parties do not dispute that the plaintiff was an invitee at the time of the incident. Restatement (Second) of Torts §332 is used by Pennsylvania courts to determine the status of a plaintiff in a premises liabilities action. *See* Gillingham v. Consol Energy, Inc., 51 A.3d 841, 849 (Pa. Super. 2012). A business invitee is someone "invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the land." Restatement (Second) of Torts §332. This properly describes plaintiff, as it is undisputed that he had a business contract with defendant and was at the USPS facility to perform that contract.

Pennsylvania has adopted the Restatement (Second) of Torts §§341, 343, and 343A, imposing on landowners a "duty to protect invitees from foreseeable harm." Carrender, 469 A.2d at 123. Under Pennsylvania law, a possessor of land will be subject to liability only if he or she:

(a) knows or by the exercise of reasonable care would discover

10

the condition, and should realize that it involves an unreasonable risk of harm to such invitee, and
(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
(c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts §343.

Further, the plaintiff must present sufficient evidence to show: (1) the defendant knew or, by using reasonable care, should have known of a dangerous condition; and (2) the defendant helped to create a harmful condition or had actual or constructive notice of the dangerous condition. Zito v. Merit Outlet Stores, 647 A.2d 573, 575 (Pa. Super. 1994) (*citing* Multrey v. Great A. & P. Tea Co., 422 A.2d 593, 596 (Pa. 1980)).

"Regardless of whether the 'hills and ridges' doctrine applies," plaintiff is required to show that defendant had constructive notice of the dangerous conditions. 2014 WL 2511281, at *7 (M.D. Pa. Jun, 4, 2014). Plaintiff here does not seem to argue that, and has not provided any evidence that, defendant had actual notice of the slippery patch of ice and snow in the parking lot. Rather, plaintiff relies on the NOAA report to show that the last time snow fell in the area was thirty-six hours before plaintiff's accident, and argues that defendant therefore had constructive notice of the condition given that significant time frame.

It is true that when determining whether a defendant had constructive notice, "one of the most important factors to be taken into consideration is the

11

time elapsing between the origin of the defect or hazardous condition and the

accident." Craig, 555 F.Supp. 2d 547, 550 (*quoting* Neve v. Insalaco's, 771

A.2d 786, 791 (Pa. Super. 2001)). There are other important factors, however,

including:

> the size and physical condition of the premises, the nature of the business conducted thereon, the number of persons using the premises and frequency of such use, the nature of the defect and its location on the premises, its probable cause and the opportunity which [the] defendant, as a reasonably prudent person, had to remedy it.

Lanni v. Pennsylvania Railroad Co., 88 A.2d 887, 889 (Pa. 1952). Although

"[t]he mere happening of an accident is not evidence of negligence," Rogers

v. Horn & Hardart Baking Co., 127 A.2d 762, 763 (Pa. Super. 1956), a plaintiff

may present sufficient circumstantial evidence to show that a defect "had

[existed] long enough so that in the exercise of reasonable care the

defendant's employees should have discovered and removed it." Rumsey v.

Great Atlantic & Pac. Tea Co., 408 F.2d 89, 91 (3d Cir. 1969) (applying

Pennsylvania law).

In cases in which the hazardous condition is naturally occurring, as is

the case with ice, the plaintiff must present "evidence that the ice was

observable for any significant period of time prior to the accident," otherwise

"the jury may not reasonably infer" a possessor of property "had constructive

notice of the hazardous condition." Tameru v. W-Franklin, L.P., 350 F.Appx.

737, 740 (3d Cir. 2009). Although the weather conditions around the time of

an accident may be conducive to the formation of ice, "constructive notice cannot be inferred from this mere possibility" alone. Id.(*citing* Sheridan v. Horn & Hardart Baking Co., 77 A.2d 362 (Pa. 1951)). However, constructive knowledge may be inferred when the defendant knows "of both the weather condition at the time of the accident and the fact that the weather condition created hazards on the premises." Id.

Here, plaintiff relies on the NOAA report to argue that the snow patch had to have been present for thirty-six hours. He also relies on his observation of marks and indentations in the snow to support the idea that the snow had been in the lot for enough time for others to walk on it and create indentations. Even assuming that the NOAA report accurately reflects the snowfall for the USPS facility, which is located some miles from the location where the NOAA measurements take place, this evidence is not sufficient to prove that defendant had constructive notice of the snow and that it is therefore liable for plaintiff's injury. While the report is useful for determining general weather conditions in the area, it does not indicate what specifically occurred at the USPS facility on the day in question, or whether snowfall or another cause resulted in the patch of snow being the parking lot.

Drawing all inferences in favor of the non-moving party, the court finds that there is an issue of material fact in the record as to whether the defendant had constructive notice. USPS employee Douglas Baxter testified, looking at photographs of the parking lot where the accident occurred, that it

13

was likely that the snow had fallen off of a vehicle, because the rest of the parking lot area appeared to be free from snow. None of the testifying USPS employees were able to say how long the snow had been in the parking lot from looking at it. The evidence is not sufficient to establish that the snow had been in the lot so long that the defendant was on constructive notice of its presence.

Moreover, plaintiff does not address any of the other factors relevant to whether an inference of constructive notice is proper. Plaintiff does not address the enormity of the facility, nor the large number of people who routinely use it. Further, defendant produced testimony that plaintiff parked in a spot different from his usual parking area, in an area where drivers and pedestrians do not routinely go. This evidence is disputed, and is relevant to whether defendant acted reasonably in its snow removal in that area.

The accident report does indicate that the weather had been cold in the days leading to the accident. However, without evidence that defendant had knowledge of the fact that the weather conditions created a specific hazard on the premises, knowledge of the cold conditions is not sufficient to establish constructive notice. Tameru, 350 F.Appx., at 740.

The question of whether constructive notice occurred is in dispute, and therefore summary judgment cannot be granted under either legal standard. What is more, as mentioned above, there are questions as to whether the accumulation occurred solely on account of recent snowfall, or because snow

14

fell off of a vehicle, or because it had been treated in some way by defendant. Thus, whether the application of the "hills and ridges" doctrine is appropriate is itself in dispute, and a matter the court cannot determine on the present record.

Plaintiff has failed to address the other elements of a premises liability negligence claim, even if defendant had constructive notice of the danger. Beyond notice, plaintiff must also show that defendant "should expect that [invitees] will not discover or realize the danger, or will fail to protect themselves against it, and fails to exercise reasonable care to protect them against the danger." Restatement (Second) of Torts §343. Plaintiff has not addressed the visibility of the snow patch, whether defendants should have expected plaintiff would not discover or realize the danger of slipperiness of the snow patch, or whether plaintiff could reasonably have protected himself from falling on it.

Plaintiff has also failed to address the issue of whether defendant took reasonable precaution in his brief. The record does not make clear whether defendant took any action to clear the snow from the area. Two USPS employees testified that the pictures of the accident scene indicated that the snow patch had a deicing product applied to it, but plaintiff does not address this evidence, or whether that action constitutes reasonable precaution. Plaintiff also puts forth Mr. Allin's expert report indicating that defendant's snow removal actions were not reasonable, but the record does little to

15

suggest what the actual actions of defendant in this case were, making it impossible to determine as a matter of undisputed fact whether they were reasonable or not. Thus, for a variety of reasons, summary judgment on the question of liability is not appropriate.

## IV.    CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment, (Doc. 36), is **DENIED**. A trial on liability and damages shall proceed as scheduled on October 27, 2014. A separate order shall issue.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: September 29, 2014**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2011 MEMORANDA\11-1766-01.wpd